UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUNSHINE IMP & EXP CORP., ) | |
|     Plaintiff, ) | |
| ) | Case No. 13 C 8925 |
| v. ) | |
| ) | |
| LUXURY CAR CONCIERGE, INC., ) | Magistrate Judge Geraldine Soat Brown |
|     Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion for Summary Judgment for breach of contract (Pl.'s Mot.) [Dkt 33.] For the reasons set forth below, Plaintiff's motion is granted.

## JURISDICTION

There is jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332 (a)(2). Plaintiff Sunshine Import & Export Corporation ("Sunshine") is a Canadian corporation doing business in Asia, Canada, and the United States. (Pl.'s LR Stmt. ¶ 4.)[1] Defendant Luxury Car Concierge, Inc. ("Luxury") was an Illinois corporation that was doing business in Chicago at the time the events in this case occurred. (Def.'s LR Resp. ¶ 5.) The parties agree that complete diversity exists and the amount in controversy exceeds $75,000. (*Id.* ¶ 2.) The parties also agree that venue is proper under

---

[1] The facts are taken from the parties' statements made pursuant to Local Rule 56.1, including Sunshine's Local Rule 56.1 Statement of Uncontested Material Facts in Support of its Motion for Summary Judgment (Pl.'s LR Stmt.) [dkt 35] and Defendant's Local Rule 56.1 Response to Movant's Statement of Uncontested Material Facts (Def.'s LR Resp.) [dkt 39]. Additional facts are taken from Luxury's Statement of Additional Facts (Def.'s Add'l Facts) [dkt 39], as well as Plaintiff's Response to Defendant's Statement of Additional Facts (Pl.'s Resp. Add'l Facts) [dkt 44].

28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims asserted occurred in the Northern District of Illinois, and because Luxury was an Illinois corporation with its principal place of business in Chicago at the time of the events. (*Id.* ¶ 3.)

## PROCEDURAL HISTORY

Sunshine previously filed a breach of contract suit against Luxury in the Circuit Court of Cook County, Illinois, which was dismissed for want of prosecution in October 2013. (Pl.'s Resp. Add'l Facts ¶ 25.) Sunshine filed this lawsuit in December 2013 claiming breach of contract and seeking damages, specific performance, and other relief the court deemed appropriate. (Compl. at 3.) [Dkt. 1.] Luxury filed an answer denying Sunshine's allegations and asserting seven affirmative defenses including: criminal acts of a non-party; failure to join an indispensable party; assumption of risk; failure to mitigate damages; failure to plead; and void contract. (Def.'s Ans. at 5-7.) [Dkt 12.] The parties consented to the jurisdiction of a magistrate judge. [Dkt 23.]

Sunshine moved for summary judgment and filed a memorandum of law in support of its motion. (Pl.'s Mem.) [Dkt 34.] Luxury filed a response in opposition to Sunshine's motion (Def.'s Resp.) [dkt 38], and Sunshine replied (Pl.'s Reply) [dkt 43].

## BACKGROUND

The facts largely are undisputed, except as noted. Sunshine procures automobiles in North America for resale in Chinese markets. (Pl.'s Resp. Add'l Facts ¶ 1.) Hao "Kelly" Kang ("Kang") is the proprietor of Sunshine. (*Id.* ¶ 2.) At the time of the events, Luxury procured and facilitated the sale of luxury automobiles in the United States to North American resellers such as Sunshine,

who in turn sold the vehicles to resellers abroad. (*Id.* ¶ 8.)[2] Erol Dimmitt ("Dimmitt") was the proprietor of Luxury. (*Id.* ¶ 10.) Luxury and Sunshine started doing business together shortly after Dimmitt and Kang met in 2008 or 2009. (*Id.* ¶ 11.) Sunshine purchased approximately 50-60 cars per year from Luxury during the course of their business relationship. (*Id.* ¶¶ 12-13.)

On or about September 24, 2012, Luxury entered into a written contract to sell Sunshine a Mercedes GL550 automobile. (Def.'s LR Resp. ¶ 6; Pl.'s Mot., Ex. A(1).) The contract stated the sale price of $101,530, broken down into a $1,000 non-refundable deposit and a balance of $100,530 to be paid within five business days of invoicing. (Def.'s LR Resp. ¶ 7.)

Sunshine paid Luxury the $1,000 deposit for the Mercedes. (*Id.* ¶ 9.) Sunshine also wired $157,630 to Luxury which included payment for the balance due on the Mercedes and payment for a Toyota Sienna that is not at issue. (*Id.* ¶ 10.) Luxury received the payment from Sunshine on September 26, 2012. (*Id.* ¶ 11.) The Mercedes was never delivered to Sunshine. (Def.'s LR Resp. ¶ 12.) Luxury did not refund the money Sunshine paid for the Mercedes. (*Id.* ¶ 13.)

Luxury asked a Tennessee-based entity known as B2K Consulting, LLC ("B2K") to procure the Mercedes, along with two other vehicles for other clients, and wired B2K $330,000 for the vehicles. (Pl.'s Resp. Add'l Facts ¶ 15.) Luxury asserts that it is common practice for vehicles sold by companies like Luxury to entities like Sunshine to be procured from unaffiliated third-parties, who, in turn, rely on their own third-party-purchasers. (*Id.* ¶ 9.) Sunshine disagrees that the practice is common in the industry. (*Id.*) Luxury also states that it previously dealt with B2K and never had problems, and therefore had no reason to anticipate any problems. (*Id.* at ¶ 16.) Sunshine takes issue

---

[2] Luxury stopped operating in Illinois in 2012. (Def.'s Add'l Facts, Ex. A, Aff. Erol Dimmitt ¶ 3.)

3

with Luxury's allegation that these previous dealings meant it had no reason to anticipate problems, calling it a legal conclusion. (*Id.*) Luxury states B2K entrusted the $330,000 to another third-party with instructions to obtain the specific vehicles, and the third-party absconded with the funds. (*Id.* ¶¶ 17-18.) Sunshine takes issue with this statement only insofar as the source affidavit constitutes inadmissible hearsay. (*Id.*) Luxury advised Sunshine of the incident and Sunshine does not dispute what happened to the funds. (*Id.* ¶¶ 19-20.) B2K filed a bankruptcy petition in the Middle District of Tennessee, and Sunshine did not file a claim in that proceeding. (*Id.* ¶¶ 23-24.) The parties do not state whether Luxury filed a claim or was listed as a creditor.

Prior to filing suit, Sunshine told Luxury that it had breached the contract and demanded that Luxury return the money Sunshine paid for the Mercedes. (Def.'s LR Resp. ¶ 14.) Luxury states that it explained to Sunshine it did not have the resources to refund the money Sunshine paid, but also states it proposed several ways to pay back the amount it lost over a short period of time, which Luxury asserts Sunshine rejected. (Pl.'s Resp. Add'l Facts ¶¶ 21-22.) Sunshine accepts that Luxury made those statements but only insofar as inadmissible settlement discussions are not invoked, and Sunshine disputes that it was offered full restitution. (*Id.*)

## LEGAL STANDARD

Summary judgment on all or part of a claim or defense is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). To oppose a motion for summary judgment successfully, the responding party may not simply rest on its pleadings, but rather must submit evidentiary materials showing that a material fact is genuinely disputed. Fed.R.Civ.P. 56(c). A genuine dispute of

4

material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the responsibility of identifying applicable evidence. *Bombard v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996). In determining whether a genuine dispute of material fact exists, the court construes all facts and draw all reasonable and justifiable inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255.

## DISCUSSION

### I. The undisputed facts show Luxury breached the contract

To prevail on a breach of contract claim under Illinois law, a plaintiff must establish: "'(1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) a resulting injury to plaintiff.'" *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001) (quoting *Hickox v. Bell*, 552 N.E.2d 1133, 1143 (Ill App. 1990)). Luxury does not dispute that there was a contract for the sale and purchase of the Mercedes at an agreed price. (Def.'s LR Resp. ¶ 6.) Sunshine paid Luxury for the vehicle, but the vehicle was never delivered to Sunshine. (*Id.* ¶¶ 9-12.) Luxury did not refund the money Sunshine paid for the vehicle. (*Id.* ¶ 13.) The undisputed facts establish that Luxury breached its contract with Sunshine and that Sunshine has been damaged as a result.

### II. Luxury's affirmative defenses

The real issue on the motion is Luxury's argument that its affirmative defenses preclude summary judgment in favor of Sunshine. (Def.'s Resp. at 4-5.) Luxury raises procedural and

5

substantive arguments.[3]

### A. Whether Sunshine waived its challenge to Luxury's affirmative defenses

Luxury argues that Sunshine cannot challenge its affirmative defenses at summary judgment because Sunshine did not respond to or move to strike Luxury's affirmative defenses. (Def.'s Resp. at 4.) Citing Illinois law, Luxury asserts that a plaintiff who fails to object to an affirmative defense waives argument as to the sufficiency of the defense. (*Id.,* citing *American Family Mut. Ins. Co. v. Albers,* 943 N.E.2d 791, 795 (Ill. App. 2011).)[4] As a result, Luxury argues, Sunshine cannot succeed on summary judgment.

Illinois substantive law governs this case, but "the federal rules of procedure and evidence always apply in federal litigation, whether or not they determine the outcome." *Allstate Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804, 806 (7th Cir. 1995). In federal litigation, "[i]f a responsive pleading is not required, an allegation is considered denied or avoided." Fed. R. Civ. P. 8(b)(6). Federal Rule of Civil Procedure 7(a), which lists the types of pleadings that are allowed, does not provide for a reply to an affirmative defense unless the court orders one. These two rules have been interpreted to mean that affirmative defenses raised in an answer are automatically denied because no reply is permitted to an affirmative defense absent a court order. 5 Charles Alan Wright, Arthur R. Miller, *Federal Practice and Procedure* § 1279, 696-97 (3d ed. 2004) (citing, *inter alia*, *Fine v. Paramount*

---

[3] Notably absent from the arguments of either party is any reference to the Uniform Commercial Code, which has been adopted in Illinois.

[4] The *American Family* case dealt with a somewhat different situation. In that case, the defendant failed to plead a statutory affirmative defense, but because the plaintiff did not object to evidence the defendant submitted at trial to support the defense, the plaintiff waived its objection to the failure to plead. *American Family,* 943 N.E.2d at 795.

*Pictures, Inc.*, 171 F.2d 571 (7th Cir. 1948) ("The affirmative defense of official employment and duty was one of avoidance which required no reply under the rules. The facts alleged affirmatively in the answer of Paramount and Stevens required no further pleading by plaintiff unless directed by the Court and were to be taken as denied.")).

In *Frerck v. Pearson Educ., Inc.*, No. 11 CV 5319, 2014 WL 3906466 at *2 (N.D. Ill. Aug. 11, 2014), the court discussed the effect of affirmative defenses in the context of a plaintiff's motion for summary judgment. The defendant in that case argued, as Luxury does here, that the plaintiff was not entitled to summary judgment because plaintiff's opening brief did not preemptively tackle all of the defendant's affirmative defenses. The court agreed with decisions requiring the defendant to raise its affirmative defenses in the opposition brief, rather than requiring the plaintiff-movant to refute affirmative defenses in its opening brief. *Id.* (citing *United Mine Workers v. Pittston Co.*, 984 F.2d 469, 478 (D.C. Cir. 1993); *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 320 F.3d 1354, 1366 (Fed. Cir. 2003); *United Cent. Bank v. Wells St. Apartments, LLC*, 957 F. Supp. 2d 978, 987–88 (E.D. Wis. 2013)). By moving for summary judgment on an entire claim, the plaintiff implicitly contends there is no genuine dispute about any fact material to the defendant's affirmative defense. *Id.* When a defendant takes a "shotgun approach" to affirmative defenses, judicial economy is preserved by forcing the defendant to identify and argue those defenses that matter. *Id.*

This court agrees with the analysis in *Frerck*. Sunshine did not waive any objections to Luxury's affirmative defenses, and by moving for summary judgment Sunshine is implicitly contending there is no genuine dispute about any fact material to the defendant's affirmative defenses.

### B. Luxury's affirmative defenses: impossibility and frustration of commercial purpose

In its response to Sunshine's motion, Luxury raises only two of its affirmative defenses: impossibility and frustration of commercial purpose. (Def.'s Resp. at 4-5.) Luxury argues that it has set forth enough facts to preclude summary judgment and to allow a jury to decide its affirmative defenses. (*Id*.)

Under Illinois law, a party asserting a defense of impossibility must show: (1) the circumstances creating the impossibility were not and could not have been anticipated by the parties; (2) the party asserting the doctrine did not contribute to the circumstances; and (3) that it has tried all practical alternatives available to permit performance. *Illinois-American Co. v. City of Peoria*, 774 N.E.2d 383, 391 (Ill. App. 2002). "The doctrine of impossibility of performance will be applied if there is an unanticipated circumstance that has made the performance of the promise vitally different from what should reasonably have been within the contemplation of the parties when the contract was entered." *Id.* (citing *Fisher v. United States Fidelity & Guaranty Co.*, 39 N.E.2d 67 (Ill. App. 1942)). The defense applies in very limited circumstances; it is the long-established rule of contracts that where a party creates a duty for itself by entering into a contract, it must abide by the contract, and subsequent contingencies not provided for in the contract that render performance impossible do not bring the contract to an end. *Mouhelis v. Thomas*, 419 N.E.2d 956, 959 (Ill. App. 1981) (holding that the fact that the defendant lost his job and could not get financing did not excuse performance of a contract to purchase real estate).

Luxury does not succeed in demonstrating the elements of the impossibility of performance defense, and in fact fails to get beyond the first element. Even if, as Luxury asserts, it is common

in the industry for sellers like Luxury to procure the vehicles from a third party, it was not unforeseeable to Luxury that its own supplier, B2K, would fail to deliver the vehicle for whatever reason.

> Promised performance sometime cannot be rendered without the participation of a third party. The fact that a promisor is unable to control the actions of a third person whose consent or cooperation is needed for performance of an undertaking ordinarily is not regarded as impossibility such as would avoid an obligation or excuse liability, unless the terms or nature of the contract indicate that this risk was not assumed. Neither is a promisor absolved from performance due to the neglect or omission of some third person upon whom the promisor had depended for performance.

30 *Williston on Contracts* § 77:1 (4th ed.). The dispute about whether using third parties to obtain vehicles is or is not typical in the industry is not material, nor is the fact that Luxury never previously had a problem with B2K.[5]

Similar but somewhat more complicated circumstances were at issue in *Tahir v. Import Acquisition Motors, LLC*, No. 09 C 6471, 2014 WL 985351 (N.D. Ill. March 13, 2014). The court there entered summary judgment against a defendant that had executed a written contract to sell the plaintiff a luxury vehicle and subsequently failed to deliver the vehicle or return funds the plaintiff had paid for the car. *Id.* at *2-4, 9. The court there observed that the inability to force a third-party to perform according to the terms of the agreement is not an unforeseeable impossibility. *Id.* at *6 (citing prior cases). As a decision by a district court, *Tahir* is not binding authority, but it is persuasive as well as consistent with general contract principles.

Luxury also argues the affirmative defense of commercial frustration, which requires: (1) a

---

[5] Luxury incorrectly states Sunshine has conceded that the loss of funds entrusted to B2K was unforeseeable. In fact, Sunshine contests Luxury's statement that it had no reason to anticipate issues dealing with B2K, and only concedes Luxury's account of what happened to the funds. (Pl.'s Resp. Add'l Facts ¶¶ 16, 20.)

9

frustrating event not reasonably foreseeable, that (2) totally or almost totally destroys the value of the party's performance. *Illinois-American,* 774 N.E.2d. at 390-91. "The doctrine of commercial frustration is not to be applied liberally," but can apply if the defendant satisfies those "two rigorous tests." *Smith v. Roberts*, 370 N.E.2d 271, 273 (Ill. App. 1977) (holding that destruction of a building terminated the lease). "The doctrine of commercial frustration will render a contract unenforceable if a party's performance under the contract is rendered meaningless due to an unforeseen change in circumstances." *Illinois-American Co.*, 774 N.E.2d at 390. More specifically, the Illinois Supreme Court has stated the defense applies:

> to cases where the cessation or nonexistence of some particular condition or state of things has rendered performance impossible and the object of the contract frustrated. It rests on the view that where from the nature of the contract and the surrounding circumstances the parties when entering into the contract must have known that it could not be preformed unless some particular condition or state of things would continue to exist, the parties must be deemed, when entering into the contract, to have made their bargain on the footing that such particular condition or state of things would continue to exist, and the contract therefore must be construed as subject to an implied condition that the parties shall be excused in case performance becomes impossible from such condition or state of things ceasing to exist.

*Leonard v. Autocar Sales & Serv. Co.*, 64 N.E.2d 477, 480 (Ill. 1945).

Like impossibility of performance, commercial frustration hinges on the foreseeability of a frustrating event. Luxury simply restates its impossibility arguments on this point, which as discussed above, are insufficient because Luxury reasonably should or could have considered the possibility that B2K would fail to obtain the vehicle, but Luxury nonetheless contracted to supply the vehicle to Sunshine without any contingencies.

Furthermore, even if Luxury were able to succeed in its affirmative defenses of impossibility and frustration of purpose to excuse its non-performance, the result would not be to allow Luxury

to retain the $101,530 that Sunshine gave in consideration for Luxury's performance. A successful affirmative defense of impossibility or frustration of purpose would result in rescission of the contract with the requirement that Luxury return the $101,530.

> The doctrine of supervening frustration, or frustration of purpose, grows out of mutual mistakes as to material facts made when the contract is entered into, with the result being rescission of the contract. . . . Promises made that become impossible to fulfill call for rescission and restitution.

28 *Williston on Contracts* § 70:167 (4th ed.); *see also* 2 E. Allan Farnsworth, *Contracts* § 9.9, 670 (3d ed. 2004) ("The other party is also entitled to restitution for any benefit conferred upon the excused party, by payment or otherwise.").

At most, if Luxury succeed on its affirmative defenses of impossibility and frustration of purpose, it might avoid any consequential damages that Sunshine could claim resulted from its inability to get possession of the vehicle and sell it to its customer. Here, however, Sunshine's motion does not request consequential damages but simply judgment for the $101,530 it previously paid, and pre-judgment interest. (Pl.'s Mem. at 4.) Ultimately, the judgment entered against Luxury would be the same if this court entered summary judgment in favor of Sunshine in the amount of $101,530 plus pre-judgment interest, or if it ordered Luxury to pay restitution to Sunshine in the same amount pursuant to one of the affirmative defenses asserted by Luxury. Sunshine's claim that it does not have sufficient funds to refund the purchase price does not create an affirmative defense to judgment.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for Summary Judgment [dkt 33] is granted. Judgment will be entered in favor of plaintiff Sunshine Import & Export Corp., and against defendant Luxury Car Concierge, Inc., in the amount of $101,530 plus prejudgment interest pursuant to 815 Ill. Comp. Stat. § 205/2. Because Sunshine has not identified the date of the breach from which interest is to run, the parties are directed to confer on the amount of pre-judgment interest to be included in the judgment and file either a joint stipulation of that amount or alternative submissions no later than May 18, 2015. Final judgment will be entered thereafter.

IT IS SO ORDERED.

_____
Geraldine Soat Brown
United States Magistrate Judge

Dated: May 7, 2015